# MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO
LAWRENCE S. BADER
BARRY A. BOHRER
CATHERINE M. FOTI
PAUL R. GRAND
LAWRENCE IASON
STEPHEN M. JURIS
JUDITH L. MOGUL
CHRISTOPHER J. MORVILLO**
ROBERT G. MORVILLO
JODI MISHER PEIKIN
LISA A. PRAGER***
ROBERT M. RADICK
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
BARBARA L. TRENCHER
RICHARD D. WEINBERG

*ALSO ADMITTED IN CALIFORNIA AND WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN WASHINGTON, D.C.

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

(212) 880-9550
bbohrer@maglaw.com

COUNSEL
BENJAMIN S. FISCHER
E. SCOTT MORVILLO
GREGORY MORVILLO
ROBERT C. MORVILLO
BARBARA MOSES*
JAMES R. STOVALL

SENIOR ATTORNEY
THOMAS M. KEANE

MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

July 15, 2011

**VIA ECF**
The Honorable Steven M. Gold
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers 1217
Brooklyn, New York 11201

      RE:    <u>United States v. Cecilia Chang, No. 11-CR-67 (SJ) (SMG)</u>

Dear Judge Gold:

      In accordance with the Court's order, I write in response to the government's letter and bill of particulars, dated July 8, 2011. In essence, Counts I and II are based on Cecilia Chang's alleged non-compliance with an unidentified St. John's policy governing the assignment of student labor and her purported unreasonable demands as an employer. Based on this alleged conduct, the government seeks to fashion a federal prosecution by unduly stretching statutes targeted at preventing bribery and forced labor. The government's submission does not resolve the infirmities in Counts I and II. If anything, it highlights them.

      First, the government has not cured the deficiencies that require dismissal of Count I under 18 U.S.C. § 666(a)(1)(B). The materials it has provided – including its complaint, discovery, opposition brief, and its newly-minted bill of particulars – still fail to apprise Ms. Chang of why allegedly asking students to perform personal labor for her in connection with their receipt of scholarships is "corrupt." As a result, the Indictment is still not sufficiently specific to pass constitutional muster. Moreover, Count I remains deficient as a matter of law.

      To sustain a violation under § 666, the defendant must have acted corruptly. As alleged, Ms. Chang was authorized to dispense scholarships to anyone in her discretion and to condition

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

The Honorable Steven M. Gold
July 15, 2011
Page 2

those scholarships on performance of labor she specified. Similarly, the government has not identified any law, state or federal, that prohibits conditioning a scholarship on the performance of personal – as opposed to university – work. Rather, the impropriety of Ms. Chang's alleged actions hinges entirely on an unidentified St. John's "conflict of interest" policy. This policy is only vaguely alluded to in the criminal complaint (but not in the Indictment or bill of particulars), which conclusorily states that "[u]nder St. John's professional conduct and conflict of interest policy, it was impermissible for a St. John's employee to condition the receipt of a scholarship upon a student doing personal work for an employee." Compl. p. 4, ¶ 7.

Despite the purportedly voluminous discovery it has furnished, the criminal complaint it filed, the opposition brief it submitted, and the bill of particulars it now serves, the government has not provided or identified the terms of the policy that allegedly serves as the basis for criminalizing Ms. Chang's conduct. Without knowing those terms, it is impossible for Ms. Chang to contest the government's claim that she acted corruptly under § 666 by breaching the policy. The language of the policy is essential to this prosecution, and the failure of the government, even now, to provide this to Ms. Chang through the Indictment is fatal. *See* Fed. R. Crim. P. 7(c)(1) ("The indictment [] must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.").

Moreover, whatever information the government claims to have conveyed so far, it does not detract from the force of Ms. Chang's other arguments to dismiss Count I, which are completely ignored by the government. None of the information contained in the Indictment or the bill of particulars (or indeed in the discovery identified by the government) alters the fact that Ms. Chang was authorized to grant the scholarships in her discretion, condition those scholarships on work by the students, and assign that work in her discretion. Therefore, the scholarships were subject to § 666's "bona fide wage…or other compensation" exception and the demands of labor could not be an illegal bribe. *See* Mem. Supp. Mot. Dismiss ("Motion") at 10-15. Furthermore, even considering the information the government boasts it has provided, reading § 666's corruptness requirement to reach simple breaches of employment policies that do not harm their employer expands the scope of the statute nearly beyond limit. *See id.* at 13-14. Finally, Ms. Chang could not have been expected to know that by purportedly breaching St. John's internal policy concerning student work assignments, she was subjecting herself to criminal prosecution under a statute aimed at "protect[ing] the integrity of vast sums of money distributed through federal programs from theft, fraud, and undue influence by bribery." *See Sabri v. United States,* 541 U.S. 600, 606 (2004) (internal citation and quotations omitted); *see* Motion at 15-18. The government's document dump cannot retroactively enlighten her regarding the government's novel theory under § 666. Notwithstanding the government's attempts to sustain it, Count I should still be dismissed as it is insufficiently alleged in the Indictment and fails as a matter of law.

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

The Honorable Steven M. Gold
July 15, 2011
Page 3

      Second, while the bill of particulars does not aid the government in defending Count I of the Indictment, it does demonstrate that Count II is an utterly inappropriate attempt to fit a square peg into a round hole. In Count II, the central issue is whether the government has identified "serious harm" sufficient to coerce these students into complying with Ms. Chang's alleged demands under 18 U.S.C. § 1589. After shifting from one theory of "serious harm" to another, the government has now articulated yet another aspect of the purported "serious harm" threatened to these students in its bill of particulars. Beyond the financial harm from the loss of scholarships, "loss of face" from being dismissed from St. John's, and dashing of dreams of pursuing a degree at an American university articulated in its opposition (but not the Indictment), the government has now added purported reputational harm suffered from displeasing "an authority figure who was considered an important person in foreign Asian communities." *Compare* Govt. Opp. p. 23 *with* Bill of Particulars, p. 2, ¶ 5. This latest allegation, indeed, may never have been presented to the grand jury, highlighting yet another danger arising from the government's ever-shifting theory under § 1589. *See United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (requiring factually sufficient indictments "…ensure[s] that [s]he [is] not prosecuted based on evidence not presented to the grand jury").

      Regardless of how it chooses to tweak its "serious harm" allegations, the government cannot, as a matter of law, pursuant to an objective standard, show that these students would have felt coerced to remain at St. John's. "Typical § 1589 cases involve use of force, threats of violence, fraud, and coercion that prevent the employee/traffickee from having viable exit options." *Alvarado v. Unversidad Carlos Albizu*, No. 10 Civ. 22072, 2010 WL 3385345, at *4 (S.D. Fla. Aug. 25, 2010). Here, even assuming that as alleged, the students would have suffered had they left St. John's, those adverse consequences cannot be said to have objectively robbed the students of "viable exit options." To hold otherwise would extend § 1589's reach into any manner of routine conflicts involving immigrants. All immigrants who work or study in the United States face potential financial loss and immigration consequences if they leave their sponsoring employer, *id.*, and every worker faces potential shame and stunted career advancement if they are terminated. Under the government's theory, any time an immigrant felt they had to choose between such consequences and undesirable job demands, § 1589 would be implicated. The statute should not be read to sweep so broadly. *See United States v. Kozminski*, 487 U.S. 931, 950 (1988) (criminal law should not be implicated "whenever an employee asserts that his will to quit has been subdued by a threat which seriously affects his future welfare but as to which he still has a choice, however painful" (internal citation and quotation omitted)).[1]

      In fact, the government's bill of particulars demonstrates that the adverse consequences articulated by the government are not objectively coercive as a matter of law. According to the

---

[1] There are no allegations here, as there were in *United States v. Calimlim*, that Ms. Chang took the students' passports, shielded them from public view, or limited their communication with the outside world. *See* 538 F.3d 706, 708-09 (7th 2008).

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

The Honorable Steven M. Gold
July 15, 2011
Page 4

government, the bill of particulars identifies (i) students from whom Ms. Chang demanded labor and (ii) students who actually performed labor for Ms. Chang. Thus, for example, the government alleges that Ms. Chang awarded Hanjun Zhang a scholarship beginning in Fall 2007 and asked him to perform personal labor for her, but that Zhang did not perform any labor for Ms. Chang that semester. Zhang continued to receive a scholarship in the Spring 2008 and Fall 2008 semesters, and likewise did not perform any personal labor for Ms. Chang. Indeed, according to the bill of particulars, a number of students continued to receive scholarships from one semester to the next even though they never performed any work for Ms. Chang, despite being asked. Thus what the government has demonstrated is that students were confronted with the financial harms and dashed dreams connected with the loss of their St. John's scholarship, but nonetheless did not comply with Ms. Chang's demand without suffering adverse consequences. If students could defy the threats (while still keeping their scholarships), then it is simply not logical to contend that these threats could compel these students to perform personal labor to avoid those threats. The students had the choice to do the work or leave, and that fact alone dooms Count II.

Counts I and II of the Indictment are attempts to stretch criminal statutes well beyond their permissible bounds. Nothing Ms. Chang is alleged to have done satisfies the commonly-held understanding of bribery or forced labor, and neither the government's discovery nor bill of particulars brings her alleged conduct into the scope of § 666 or § 1589. These counts should be dismissed.

Very truly yours,

/s/ Barry A. Bohrer

Barry A. Bohrer

cc: AUSA Charles Kleinberg