UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
UNITED STATES OF AMERICA                           :
                                                   :        REPORT &
                                                   :        RECOMMENDATION
            -against-                              :        11-CR-67 (SJ)
                                                   :
                                                   :
CECILIA CHANG,                                     :
                                                   :
                        Defendant.                 :
                                                   :
------------------------------------------------------------------- x
GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

On January 28, 2011, defendant Cecilia Chang was charged in a nine-count indictment with various crimes she allegedly committed during her tenure as a Dean and Vice President at St. John's University.  Count One of the indictment charges Chang with corruptly soliciting, demanding, and accepting the labor of St. John's students with the intent to be influenced in the awarding of university scholarships worth $5,000 or more in violation of 18 U.S.C. § 666(a)(1)(B).  Count Two charges Chang with knowingly and intentionally obtaining the labor and services of one or more persons by means of threats of serious harm to those persons and engaging in a scheme intended to cause them to believe that they would suffer serious harm if they did not perform labor she demanded in violation of 18 U.S.C. § 1589.

Defendant has moved to dismiss Counts One and Two on the grounds that (1) Counts One and Two fail to state the charges against her with sufficient particularity; (2) Count One fails because the scholarships defendant awarded qualify for the "bona fide" wages exception in 18 U.S.C § 666(c) and because defendant did not act "corruptly" as defined by 18 U.S.C. § 666(a)(1)(B); (3) Count Two fails because defendant did not threaten "serious harm" as

required by 18 U.S.C. § 1589(a); and (4) both Counts One and Two are unconstitutionally vague as applied to the charged conduct.

The Honorable Judge Sterling Johnson has referred defendant's motion to me for a Report and Recommendation.  I held oral argument on defendant's motion on July 20, 2011.  Subsequently, on August 11, 2011, the government filed a superseding indictment.  Docket Entry 36.  While the language of Count One in the superseding indictment is identical, the superseding version of Count Two contains additional factual detail.  For the following reasons, I respectfully recommend that defendant's motion be denied.

## BACKGROUND

The following facts are alleged in the government's affidavit in support of an arrest warrant ("Aff.") (Docket Entry 1), the superseding indictment ("Ind.") (Docket Entry 36), and the government's bill of particulars ("BOP") (Docket Entry 28).

St. John's University ("St. John's") is an undergraduate and graduate institution located in Queens, New York.  Aff. ¶ 3.  From 2005 through 2010, St. John's received millions of dollars in federal funds each year in the form of grants, contracts, and other forms of federal assistance.  Ind. ¶ 1; Aff. ¶ 8.

Chang began working as the Dean of the St. John's Center of Asian Studies in 1982 and was appointed to the position of Vice President for International Relations in 1992.  Aff. ¶ 4.  Chang held both positions until 2010.  *Id.*  By virtue of these positions, Chang had the authority to award discretionary scholarships to as many as fifteen students each year.  Aff. ¶ 5.  Many of the students to whom Chang awarded these scholarships came from abroad and travelled to the United States on student visas.  Ind. ¶ 2; Aff. ¶¶ 5, 26; BOP ¶ 5.  These students and their families considered Chang to be a person of authority and prominence.  BOP ¶ 5.

Upon selecting a student for a discretionary scholarship, Chang would send an introductory letter informing the student of the award.  Aff. ¶ 5.  The letter stated that the student was "selected to be the recipient of an Asian Center Work-related Grant."  Def.'s Mem. Ex C.  In return for the scholarship the student was expected to work twenty hours per week and perform "duties assigned by the Vice President for International Relations and Dean of the Center of Asian Studies."  *Id.* The grant could be terminated at any time by Chang "if the recipient failed to perform his or her work duties."  *Id.*  The letter also stated that, by signing it, the student was agreeing to "all the terms and conditions of [the] grant."  *Id.*

St. John's expected that Chang would assign the students work related to the Asian Studies program.  Aff. ¶ 6.  Instead, though, Chang required students to perform personal chores for her and her son.  Aff. ¶ 9; BOP ¶ 3.  These services included:

> cooking, cleaning, washing clothes, scrubbing floors, housework, chauffeuring the defendant and her son, garbage disposal, child care and tutoring of minors not enrolled at St. John's, answering the defendant's personal emails, personal typing and other personal secretarial work, personal banking and conducting financial transactions for the defendant, the delivery of cash to the defendant and other personal chores for the defendant and the defendant's son.

BOP ¶ 3.  In addition, the government charges that Chang required students to assist her in a scheme to embezzle money from St. John's by falsifying documents such as credit card statements that Chang planned to submit to the university for reimbursement.  Aff. ¶¶ 24-25; BOP ¶ 3.  The prosecution further alleges that both Chang and her son verbally mistreated the students.  Aff. ¶¶ 16, 23.

Chang threatened the students with termination of their scholarships and loss of their visas if they did not comply with her demands.  Aff. ¶¶ 9, 22; BOP ¶¶ 3, 5.  As a result of Chang's threats, these students felt compelled to perform the services Chang demanded.  BOP

3

¶ 5.  St. John's professional conduct and conflict of interest policies prohibited St. John's employees from conditioning the receipt of a scholarship on a student's performance of personal services for an employee.  Aff. ¶ 7.

DISCUSSION

A defendant may seek dismissal of an indictment by making a pre-trial motion.  FED. R. CRIM. P. 12(b)(2); *United States v. Caronia*, 576 F. Supp. 2d 385, 390 (E.D.N.Y. 2008).  In reviewing a motion to dismiss, the facts alleged by the government in the indictment must be accepted as true.  *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).  While a court may consider additional documents outside of the indictment, it may not accord any weight to contrary factual assertions made by the defendant.  *Caronia*, 576 F. Supp. 2d at 390-91; *Goldberg*, 756 F.2d at 950.

A.  Specificity

Federal Rule of Criminal Procedure 7(c) requires that an indictment set forth "a plain, concise and definite written statement of the essential facts constituting the offense charged."  This rule fulfills the Sixth Amendment mandate that a defendant be informed of the "nature and cause of the accusation" against her and enforces the Fifth Amendment's prohibitions against double jeopardy and trials based on evidence not presented to a grand jury.  *United States v. Pirro*, 212 F.3d 86, 91-92 (2d Cir. 2000); *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999); *United States v. Upton*, 856 F. Supp. 727, 738 (E.D.N.Y. 1994).  Thus, an indictment is sufficient if it notifies the defendant of the charges that must be met, enables the defendant to plead double jeopardy in a prosecution based on the same set of events, and ensures that the government "will not fill in elements of its case with facts other than those considered by the grand jury."  *Walsh*, 194 F.3d at 44 (quoting *United States v. Abrams*, 539 F. Supp. 378, 384

(S.D.N.Y. 1982)); *accord United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992);

*United States v. Urso*, 369 F. Supp. 2d 254, 266 (E.D.N.Y. 2005).

Rule 7(c) does not, however, require that an indictment contain a high degree of

specificity.  To the contrary, the Second Circuit has "consistently upheld indictments that do

little more than to track the language of the statute charged and state the time and place (in

approximate terms) of the alleged crime."  *Walsh*, 194 F.3d at 44 (internal quotations omitted).

Moreover, "[t]here is no requirement that an indictment set forth with specificity any particular

factual element of the crimes charged."  *Urso*, 369 F. Supp. 2d at 266.  *See also, United States v.

Palmiotti*, 254 F.2d 491, 495 (2d Cir. 1958) (upholding extortion indictment although it failed to

allege "the particular kind of 'wrongful use of actual or threatened force, violence, or fear' relied

upon); *United States v. Persico*, 621 F. Supp. 842, 859 (S.D.N.Y. 1985) (holding that an

indictment need not include the exact dates on which the defendant demanded money, the

locations where the demands were made nor the individuals who made payments so long as there

is "enough additional detail to give [the defendant] notice and protection against double

jeopardy").  Finally, "where an indictment has been found minimally sufficient, a court may look

to the record as a whole" to determine whether a defendant's constitutional rights have been

adequately protected.  *Walsh*, 194 F.3d at 45; *United States v. McClean*, 528 F.2d 1250, 1257 (2d

Cir. 1976).  Thus, even where an indictment is factually sparse, a court may consider whether a

bill of particulars and other pre-trial discovery provide sufficient detail to protect a defendant's

rights.  *Stavroulakis*, 952 F.2d at 693; *Upton*, 856 F. Supp. at 740-41.

    i.  *Count One: Solicitation of Bribes*

Count One of the Indictment charges defendant with violating 18 U.S.C. § 666(a)(1)(B),

and states as follows:

In or about and between September 2007 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CECILIA CHANG, being an agent of an organization, to wit: St. John's University ("St. John's"), which organization received in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance, in a one-year period, did knowingly, intentionally and corruptly solicit, demand, accept and agree to accept something of value from one or more persons, to wit: the labor of students to whom she awarded, promised to award, agreed to award or continued to award scholarships to attend St. John's, intending to be influenced and rewarded in connection with the business and a series of transactions of St. John's involving things of value of $5,000 or more.

Count One does substantially more than track the language of the charging statute. The indictment delineates the elements of the offense and the approximate time period and location of the charged conduct. Count One also identifies St. John's as the organization that received federal funds and, perhaps most importantly, details the alleged quid pro quo charged as a bribe: the award of financial aid scholarships to attend St. John's in return for the labor of students receiving the scholarship aid. Thus, Count One describes the "things of value" that defendant received, the category of persons from whom she received them, and the means by which she solicited or demanded that these persons provide these things of value to her.

Furthermore, the government has provided defendant with a bill of particulars that identifies, by name, each student from whom defendant allegedly demanded labor and delineates the year and academic semester in which defendant is alleged to have done so. *See* BOP Ex. 2. The bill of particulars also specifies the nature of the labor that defendant demanded, including cooking, cleaning, personal secretarial work, and assistance with defendant's embezzlement scheme. BOP ¶ 3. Thus, as a result of the indictment and the government's additional disclosures, defendant has been provided with notice of (1) the organization receiving federal funds, (2) the specific individuals from whom she is accused of demanding bribes, (3) the

approximate time period by year and academic semester that these demands for bribes were made, (4) the nature of bribes she received, and (5) the particular business or transaction of St. John's that the bribes were meant to influence.  These facts provide defendant with more than adequate notice to prepare her defense.  *See Stravoulakis*, 952 F.2d at 693; *McClean*, 528 F.2d at 1257; *Upton*, 856 F. Supp. at 740-41.

    ii.  *Count Two: Forced Labor*

For similar reasons, Count Two of the superseding indictment is pled with sufficient specificity.  Count Two charges Chang with obtaining the labor or services of another in violation of 18 U.S.C. § 1589(a).  The statute prohibits obtaining labor by means of, *inter alia*, a threat of serious harm or a scheme intended to cause another to believe that they would suffer serious harm.  *Id.*  Count Two of the Indictment alleges as follows:

> In or about and between September 2007 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CECILIA CHANG, together with others, did knowingly and intentionally obtain the labor and services of one or more persons, to wit: personal labor and services provided by foreign St. John's students to whom Chang had awarded, and who continued to receive St. John's scholarships (the "student") [sic], by means, and a  combination of means of (a) threats of serious harm to the students and other persons, and (b) a scheme, plan and pattern intended to cause the students to believe that if they did not perform such labor and services, they and other persons would suffer serious harm, including psychological, financial, and reputational harm resulting from the loss of the students' scholarships and their visas.

Like Count One, Count Two includes the elements of the offense charged and provides sufficient additional information to safeguard defendant's constitutional rights.  The charge identifies defendant's victims as foreign St. John's students receiving scholarship funds and specifies the labor defendant obtained to be personal services.  Moreover, the indictment details the manner in which defendant forced her victims to provide her with labor, charging that

defendant caused these foreign students to believe that they would lose their scholarships and visas if they did not comply with her demands.  Thus, "far from just tracking the language of the statute, [the indictment] also provide[s] 'facts and circumstances as will inform the accused of the specific offense coming within the general description, with which he is charged.'"  *See Upton*, 856 F. Supp. at 740 (quoting *United States v. Hamlin*, 418 U.S. 87, 119 (1974)).

In addition, the bill of particulars amplifies the indictment's allegations by naming the specific students from whom the defendant obtained labor and the year and semester the labor was obtained.  The bill of particulars also spells out in detail the nature of the "serious harm" with which defendant allegedly threatened the students, as follows:

> (1) loss of financial support that the students needed to attend university in the United States; (2) loss of reputation as a result of being dismissed . . . and displeasing defendant, a person whom the students and their families considered to be an authority figure . . . [and] and important person in foreign Asian communities; and (3) the psychological harm resulting from . . . [the] loss of their student visas, which would require them to return to their home countries . . . and . . . the loss of their dreams of obtaining a degree from a major American University.

BOP ¶ 5.  Given these additional disclosures, defendant has clearly been provided with sufficient notice of the specific nature of the crime charged "to protect against double jeopardy and to enable [her] to prepare for trial." *McClean*, 528 F.2d at 1257.

B.  18 U.S.C. § 666

Defendant Chang argues that the conduct alleged in the indictment fails to state a prosecutable offense under 18 U.S.C. § 666 for three reasons.  First, Chang argues that her transactions with St. John's students are exempt from prosecution because they involved "bona fide" compensation as defined in § 666(c).  Second, Chang contends that the allegations against her fail to establish that she acted "corruptly" as required by § 666(a)(1)(B).  Finally, Chang

asserts that construing the term "corruptly" to reach her conduct in this case would render § 666 unconstitutionally vague.  I take up each argument in turn.

    *i.*   *The Bona Fide Compensation Exemption*

       Section 666(c) exempts "bona fide salary, wages, fees or other compensation paid, or expenses paid or reimbursed, in the usual course of business."  This provision was enacted "to avoid [the statute's] possible application to acceptable commercial and business practices." *United States v. Valentine*, 63 F.3d 459, 465 (6th Cir. 1995) (quoting H.R. Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.C.C.A.N. 6138, 6153).  According to defendant, because the students' scholarships were conditioned upon the students performing work that she assigned, and because the students did in fact perform that work, the scholarships are a form of bona fide compensation and defendant's award of those scholarships in return for work is exempt from prosecution pursuant to § 666(c).

       In support of her argument, defendant relies primarily on *United States v. Mills*, 140 F.3d 630 (6th Cir. 1998), a Sixth Circuit case in which a deputy sheriff was accused of violating § 666(a)(1)(b) by accepting bribes in the amount of approximately $4,000 in exchange for hiring individuals to work in the county sheriff's department.  *Id.* at 631.  The bribers subsequently worked for the county as sheriff's deputies and were compensated by the county for their labor. *Id.* at 631, 633.  The defendant in Mills challenged his conviction on the ground that the $5,000 threshold in § 666(a)(1) was not met.  Although the amount of the bribes paid did not exceed $5,000, the prosecution argued that the threshold was satisfied by the salaries paid to the deputies hired in return for the bribes.  The *Mills* Court did not agree.  Rather, in construing § 666(c)'s bona fide compensation exception, the Court held that the deputies' wages could not be used to value the transaction at issue because "the salaries . . . paid to deputy sheriffs [were] for actual

9

performance of necessary governmental duties" and there was no allegation that "the jobs in question were unnecessary or that the individuals who obtained those employment positions did not responsibly fulfill the duties associated with their employment." *Id.* at 633.

*Mills* is readily distinguishable from this case. The deputies in *Mills* were compensated for work that they actually performed for the county and for which they could be legitimately compensated. *See id.* at 633-34. Here, in contrast, the students received university financial aid but did not actually perform work for the university. Rather, as the government alleges, defendant diverted the students' labor for her own personal use, contravening St. John's conflict of interest policy. As a result, the scholarships at issue "were not properly earned" and cannot plausibly be considered compensation obtained "in the usual course of business." *See id.* at 634.

The facts of this case are closer to those in which application of the exception in § 666(c) was rejected. For example, in *United States v. Baldridge*, 559 F.3d 1126 (10th Cir. 2009), a county commissioner used public funds to pay for construction work performed at his sister's residence. Although the work was actually performed and the amount billed was not challenged, the Court refused to apply the exception in § 666(c), reasoning that "[b]ecause this was not work for which [the contractor] could have been paid by the County, the payment was not a bona fide wage paid in the usual course of business." *Id.* at 1139. Similarly, in a case involving facts almost identical to those at issue here, defendant in *Valentine* "required water department employees to run her personal errands during working hours" with "city-owned vehicles and equipment." 63 F.3d at 462. The Court noted that the bona fide salary exception was adopted to avoid application of § 666 to acceptable business practices and refused to apply it, stating that "[c]ertainly, the use of employees for personal errands and chores is not an acceptable business practice." *Id.* at 465. *See also United States v. Cornier-Ortiz*, 361 F.3d 29, 36 (1st Cir. 2004)

(although actual work was performed in return for payments, the court refused to apply the bona fide salary exception because the payments were funneled through a middleman to hide a conflict of interest; the court held that "[a] scheme designed to evade conflict of interest rules is hardly legitimate or acceptable"); *United States v. Grubb*, 11 F.3d 426, 431, 434 (4th Cir. 1993) (holding that a salary paid to a part-time investigator who received his position as a result of a bribe and "performed little work for the sheriff's office" did not fall with the exception for bona fide wages). Because St. John's students could not legitimately be awarded scholarships in return for providing personal services to school officials, as opposed to services to the school, the transactions described in Chang's indictment do not fall within the exception for bona fide compensation.

*ii.  Whether Chang "Corruptly" Solicited Student Labor*

Defendant next argues that the facts alleged by the prosecution fail to establish that she acted "corruptly" as required by § 666(a)(1)(B). Chang's argument appears to have two prongs. First, citing the Second Circuit's decision in *United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994), defendant contends that an act is not performed corruptly unless it "entails the violation of some duty owed to the government or the public in general." *Rooney*, 37 F.3d at 852. Second, Chang contends that the facts alleged by the prosecution amount to no more than a breach of a private contract and would fail to establish corrupt intent even if proven to be true.

The arguments raised by Chang are similar to those rejected by the Court in *United States v. Panagi*, No. 09-CR-477, Docket Entry 80, at 21-29 (E.D.N.Y. Apr. 2, 2010) (holding that defendants, employees of Con Ed, acted corruptly as defined by § 666(a)(1)(B) when they received bribes in return for approving reimbursement of illegitimate expenditures by private contractors). As the Court explained in *Panagi*, "the term 'corruptly' in § 666 concerns the *mens*

*rea* requirement of the statute, not the status of the defendants as public or private figures or whether their duties are owed to public or private companies." *Id.* at 22.  The only nexus to the government required by § 666 is that the corrupt acts be committed by an agent of an organization that receives more than $10,000 in federal funds during a one year period.  18 U.S.C. § 666(b).  *See also Sabri v. United States*, 541 U.S. 600, 605-07 (2004) (noting that § 666 is intended to safeguard the integrity of organizations and local governments that receive federal funds).  Because St. John's is such an organization, the duty Chang owed to St. John's falls within the statute's reach.

Nor can there be any serious doubt about whether the conduct attributed to Chang rises to the level of a "corrupt" solicitation or demand as required by § 666(a)(1)(B).  When Congress employs a term of art "in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached . . . and the meaning its use will convey to the judicial mind."  *United States v. Zacher*, 586 F.2d 912, 914 (2d Cir. 1978) (interal quotations omitted).  As used in criminal statutes, the term corruptly "has a longstanding and well-accepted meaning."  *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., dissenting).  The term denotes "an act done with intent to give some advantage inconsistent with official duty and the rights of others . . . with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person."  *United States v. Ford*, 435 F.3d 204, 211 (2d Cir. 2006) (quoting *Aguillar*, 515 U.S. at 615 (Scalia, J., dissenting)).  Put more succinctly, "there must be a quid-pro-quo."  *Id.* at 213; *see also Panagi*, Docket Entry 80, at 23.

The acts alleged by the government here plainly constitute a quid-pro-quo and not, as defendant suggests, a mere breach of contract.  A breach of contract may be shown by well-

intentioned efforts that nevertheless fail to meet the contract's requirements, such as untimely performance or delivery of non-conforming goods.  Here, defendant is accused of demanding that students provide her and her family with menial labor and create false documents in aid of her embezzlement scheme in exchange for approval of their scholarships.

Although defendant relies on the Second Circuit's holding in *Rooney*, that decision offers no support to her position.  *Rooney* involved a defendant who formed a partnership to develop a housing project for the elderly that was funded in part by loans from a federal agency.  37 F.3d at 849.  During construction, Rooney, who remained personally obligated on the debts of the partnership, had disagreements with his general contractor which resulted in delays and mounting costs.  *Id.*  Eventually, the amount due to the general contractor exceeded the amount of Rooney's loan from the federal agency.  *Id.*  Knowing that the contractor preferred immediate payment, Rooney offered to borrow additional federal funds so he could make prompt payment if the contractor would agree to install a pond adjacent to the development at no extra cost.  *Id.* at 850.

Rooney was convicted of violating § 666 for having made this proposition to the contractor.  The Second Circuit reversed, holding that Rooney did not violate § 666 because his intent when offering prompt payment was not corrupt.  *Id.* at 853-54.  As the court explained, Rooney was under no duty "to acquiesce in construction costs he consider[ed] unreasonable and no duty to apply for federal funds to meet every obligation of the contract."  *Id.* at 853.  He simply drove a hard bargain in connection with a project that had federal funds at stake.  *Id.*  In fact, by doing so he arguably advanced the government's interests by safeguarding limited federal funds.  *Id.* at 852-53.  Thus, the thrust of the Court's analysis was simply that "corruption requires *some* breach of duty" and that Rooney had committed none.  *Id.* at 852 (emphasis

added).  *See also Panagi*, No. 09-CR-477, Docket Entry 80, at 29 (explaining that "[t]he far narrower holding of the [*Rooney*] case involves situations in which a § 666 defendant neither owes nor breaches any duty whatsoever").  In contrast to the circumstances in *Rooney*, the government has alleged here that defendant breached her duty to St. John's by misusing her position for personal gain, and has thus properly alleged that she acted corruptly in violation of § 666.

### iii.  Unconstitutional Vagueness

Defendant next contends that the corrupt intent requirement of § 666 would have to be so broadly construed to encompass the allegations in this case that it would render the statute unconstitutionally vague as applied.  According to defendant, a broad construction of the term "corruptly" risks criminalizing purely private contractual breaches and should therefore be avoided.

 "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The Supreme Court has identified two grounds for invalidating a statute on grounds of vagueness:

> First, [a statute] may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second it may authorize and even encourage arbitrary and discriminatory enforcement.

*United States v. Rybicki*, 354 F.3d 124, 134 (2d Cir. 2003) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality opinion)); *accord Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Due process, however, "requires only that the statutory language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and

practices."  *United States v. Farhane*, 634 F.3d 127, 139 (2d Cir. 2011) (internal quotations

omitted).  An Act of Congress enjoys a strong presumption of validity and will not be

"invalidated as vague simply because difficulty is found in determining whether certain marginal

offenses fall within [its] language."  *Parker v. Levy*, 417 U.S. 733, 757 (1974); *accord Rybicki*,

354 F.3d at 136 n.9.  Thus, an as-applied challenge will fail "in any specific case where

reasonable persons would know that their conduct is at risk."  *Mannix v. Phillips*, 390 F. Supp.

2d 280, 290 (S.D.N.Y. 2005) (internal quotations omitted).  "As long as the statute is clear as to

the [defendant's] behavior, we need not be concerned" about hypothetical ambiguity on the outer

fringes of the statute's bounds.  *United States v. Irwin*, 354 F.2d 192, 196 (2d Cir. 1965).  *See*

*also Skilling*, 130 S.Ct. at 2933 ("Even if the outermost boundaries of a statute are imprecise, any

such uncertainty has little relevance where [a defendant's] conduct falls squarely within the hard

core of the statute's proscription.") (internal quotations and alterations omitted).

Similarly, a statute will not be deemed unconstitutionally vague on arbitrary enforcement

grounds where it provides sufficient standards to channel law enforcement discretion.  *Farhane*,

634 F.3d at 139.  "Effective law enforcement often requires the exercise of some degree of police

judgment but this alone does not render a statute unconstitutional."  *United States v.*

*Schneiderman*, 968 F.2d 1564, 1568 (2d Cir. 1992) (internal quotations omitted), *abrogated on*

*other grounds by Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513 (1994).  "Statutes need

not . . . achieve meticulous specificity, which would come at the cost of flexibility and

reasonable breadth."  *Arriaga v. Mukasy*, 521 F.3d 219, 224 (2d Cir. 2008) (internal quotations

omitted).

Here, defendant clearly had notice that her conduct exposed her to criminal prosecution.

Bribery and corruption are terms of "common usage" and are readily understood by persons of

ordinary intelligence.  *See Zacher*, 586 F. 2d at 916.  Indeed, the conduct prohibited by § 666 has

been held to be "*malum in se*—that is, it is the kind of law that a person would intuit existed

because the conduct it forbids is contrary to the moral code of his society."  *Panagi*, No. 09-CR-

477, Docket Entry 80, at 32 (internal quotations and alterations omitted).  Moreover, the *mens*

rea component of the statute – i.e., the requirement that a solicitation or demand be made

"corruptly" – further undermines defendant's vagueness argument; "[t]he Supreme Court has

repeatedly held that the constitutionality of a vague statutory standard is closely related to

whether that standard incorporates a requirement of *mens rea*."  *Schneiderman*, 968 F.2d at 1566

(internal quotations omitted).  *See also*, *United States v. Awan*, 459 F. Supp. 2d 167, 179

(S.D.N.Y. 2006); *Mannix*, 390 F. Supp. 2d at 291.  For all these reasons, I respectfully

recommend that defendant's motion to dismiss Count One of the superseding indictment be

denied.

    C.  Failure to Charge a Crime Under 18 U.S.C. § 1589(a)

    *i.*  *Serious Harm*

       Defendant challenges the forced labor charge in Count Two on the ground that the

conduct alleged by the prosecution was not sufficiently coercive to pose a "threat of serious

harm" as required by 18 U.S.C. § 1589.  More specifically, defendant suggests that, because the

students from whom she demanded labor could have rejected her demands and surrendered their

scholarships, they were not truly threatened or coerced.

       The forced labor statute, 18 U.S.C. § 1589, prohibits:

> knowingly providing or obtaining the labor or services of a person by,
> *inter alia*, threats of serious harm to . . . that person . . .  [or] by means of
> any scheme, plan, or pattern intended to cause the person to believe that, if
> the person did not perform such labor . . .  that person  . . . would suffer
> serious harm or physical restraint.

Section 1589 was enacted in the wake of an earlier Supreme Court decision, *United States v. Kozminski*, 487 U.S. 931 (1988), in which the Court construed 18 U.S.C. § 1584, a similar statute that prohibits involuntary servitude, and limited the reach of that statute to cases involving  threats of physical or legal coercion as opposed to psychological pressure.  *See Kozminski*, 487 U.S. at 948-49; *United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004) (citing H.R. Conf. Rep. No. 106-939, at 100-01 (2000)), *judgment vacated on other grounds,* 545 U.S. 1101 (2005).  Congress enacted § 1589 to reach "more subtle psychological methods of coercion" in addition to threats of physical violence.  *Bradley*, 390 F.3d at 150; *accord United States v. Dann*, _ F.3d _, 2011 WL 2937944, at *9 (9th Cir. July 22, 2011); *United States v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008); *United States v. Garcia*, 2003 WL 22956917, at *4 (W.D.N.Y. Dec. 2, 2003).

The statute itself delineates the types of harm within its scope.  Section 1589(c)(2) defines "serious harm" as

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).[1]  The term encompasses a "broad array of harms" that, when taken together, are sufficiently coercive "to maintain or obtain a victim's labor or services."  *Garcia*,

---

[1] Although neither party has raised the issue, the language from 18 U.S.C. § 1589 quoted in the text was added in a 2008 amendment, yet the government's superseding indictment charges conduct that occurred during a period ranging from 2007 through 2010. In light of § 1589's legislative history, however, it appears that the 2008 amendment served merely to clarify the statute's meaning and did not amount to a substantive change to its provisions.  *See United States v. Sou*, 2011 WL 3207265, at *5 (D. Haw. July 29, 2011) (holding that the term "serious harm" included a broad range of physical and nonphysical harms both before and after the 2008 amendment).  *See also Lynce v. Mathis*, 519 U.S. 433, 442 (1997) ("To fall within the *ex post facto* prohibition, a law must be retrospective-that is, it must apply to events occurring before its enactment-and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime.")

2003 WL 22956917, at *4 (quoting H.R. Conf. Rep. No. 106-939, at 101).  As the statute itself makes clear, the harms may be financial, such as threats to withhold wages; psychological, such as verbal abuse, harsh mistreatment, and threats of deportation; and reputational, such as a threat to accuse the victim of wrongdoing he did not commit.  *See e.g.*, *Dann*, 2011 WL 2937944, at *9-11 (analyzing a defendant's threats related to adverse immigration consequences, refusal to pay back wages, and false accusations of stealing); *Bradley*, 390 F.3d at 152 (affirming convictions based upon threats or coercion involving "the taking of passports and mentions of violence, combined with . . . scrutiny of, or restrictions on, the victims' local travel"); *United States v. Sou*, 2011 WL 3207265, at *4 (D. Haw. July 26, 2011) (finding serious harm where indictment alleged "threats of deportation, which would result in severe financial losses to the victims and their families").

Although "[t]he test of undue pressure is an objective one" and asks whether a reasonable employee would feel sufficiently coerced by a defendant's conduct, "known objective conditions that make the victim especially vulnerable to pressure (such as youth or immigrant status) bear on whether" the victim was subjected to "serious harm."  *Bradley*, 390 F.3d at 153; s*ee also Dann*, 2011 WL 2937944, at *9 (explaining that serious harm is analyzed "from the vantage point of a reasonable person in the place of the victim").  Quoting from the legislative history, the court in *Garcia* noted that "section 1589's terms and conditions are intended to be construed with respect to the individual circumstances of victims that are relevant in determining whether a particular type or certain degree of harm or coercion is sufficient."  2003 WL 22956917, at *4

---

(internal quotations, citations, and alterations omitted); *United States v. Mapp*, 990 F.2d 58, 61 (2d Cir. 1993) ("When an amendment serves merely to clarify and does not enhance punishment, the Ex Post Facto Clause is not implicated.").  Nevertheless, I respectfully recommend that any order adopting this report and recommendation be entered without prejudice to the defendant's right to raise this issue at an appropriate later date.

(internal quotations omitted). Thus, factors such as a victim's youth, background, and immigrant status are relevant to the determination. *Id.*

In this case, the government has alleged sufficient facts to support a finding of "serious harm." The allegations are that defendant's victims were young, college-aged students, presumably newly arrived in the United States. Defendant caused these students to believe that, unless they complied with her demands for labor, they would lose a coveted academic scholarship and be forced to leave the United States without earning a college degree. Defendant used her position of authority as the students' dean to intimidate them, verbally mistreating the students as part of her scheme. Moreover, if they failed to comply, the students risked not only being forced out of the United States but returning home as failures in their communities, having been dismissed from a prestigious American university after disobeying a respected authority figure. These threats of financial, psychological, and reputational harm fit comfortably within the "broad array" of serious harms contemplated by section 1589 and held sufficient by other courts. *See Sou,* 2011 WL 3207265, at *4; *Garcia,* 2003 WL 22956917, at *4.

*ii. Unconstitutional Vagueness*

Finally, defendant argues that Count Two should be dismissed because the term "serious harm" is unconstitutionally vague as applied to her conduct. For reasons that are similar to those discussed above in connection with defendant's vagueness challenge to Count One, this argument is without merit.

First, the statute applies only to an individual who "knowingly" obtains labor by threats of "serious harm." 18 U.S.C. § 1589. This express scienter requirement significantly ameliorates any vagueness concerns. *Sou,* 2011 WL 3207265, at *7 ("Section 1589's requirement that the threats be made 'knowingly' . . . provid[es] ample notice."); *see also*

*Calimlim*, 538 F.3d at 711 (finding that the presence of a *scienter* element in section 1589 makes a defendant's "burden very difficult to carry"); *Garcia*, 2003 WL 22956917, at *3 (holding that "the government must prove a specific intent and therefore, such requirement nullifies the defendant's claim of impermissible vagueness").

Further, the statute's definition of "serious harm" provides sufficient clarity to overcome vagueness concerns. *See Farhane*, 634 F.3d at 142 (relying on a statute's legislative gloss to reject a vagueness challenge). The statute defines "serious harm" to include only those harms that are "sufficiently serious . . . to *compel* a reasonable person . . . to perform . . . labor." 18 U.S.C. § 1589(c)(2) (emphasis added). The House Conference Report confirms that the statute targets only threats of "dire consequences," that is, "harm or coercion [that] is sufficient to maintain or obtain a victim's labor." H.R. Conf. Rep. No. 106-939, at 1001, 2000 WL 1479163, at *91-92. Thus, only an individual who obtains labor by conduct that is sufficiently serious and specifically intended to compel another to perform that labor violates the statute. Given these standards, the statute "explains with sufficient definitiveness what is prohibited, and the specific intent that is required," and its enforcement is thus "not left to the arbitrary . . . choices of law enforcement." *See Awan*, 459 F. Supp. 2d at 179 (internal quotations omitted). Accordingly, I respectfully recommend that defendant's motion to dismiss the forced labor charge in Count Two be denied.

CONCLUSION

For all these reasons, I respectfully recommend that defendant's motion to dismiss Counts One and Two be denied. Any objections to the recommendations contained in this report must be filed within fourteen days and in any event no later than October 6, 2011. Failure to

20

timely object to this report may waive the right to appeal the district court's order.  *See* 28 U.S.C.

§ 636(b)(1); FED. R. CRIM. P. 59; *See Thomas v. Arn*, 474 U.S. 140, 155 (1985).


_____/s/_____
**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
September 19, 2011


*U:\BW 2010\US v Chang\Chang R&R final.doc*